


DOC-1024 (Rev. 02/2009)

|  DIVISION OF ADULT INSTITUTIONS<br>POLICY AND PROCEDURES | **DAI Policy #:** 300.00.71 | **Page** 1 **of** 5 |
|---|---|---|
| | **Original Effective Date:** 12/05/02 | **New Effective Date:** 11/15/21 |
| | **Supersedes:** 300.00.71 | **Dated:** 05/14/18 |
| | **Administrator's Approval:** Sarah Cooper, Administrator – 10/26/21 | |
| | **Required Posting or Restricted:**<br>☐ Inmate ☒ All Staff ☐ Restricted | |
| **Chapter:** 300 Administrative | | |
| **Subject:** Reporting Serious Incidents, Events of Special Interest and Legislative Inquiries | | |

**POLICY**

The Division of Adult Institutions shall ensure notification is made to designated DOC staff in Central Office of serious incidents, events of special interest and legislative inquiries. Department and Division administrative personnel shall be expeditiously informed of all matters of significant interest that occur in adult facilities.

**REFERENCES**

Wisconsin Administrative Code s. DOC 309.03 – News media access to inmates
DAI Policy 300.00.70 – Assaults by Inmate, Reporting and Tracking
DAI Policy 300.00.79 – Media
DAI Policy 500.70.25 – Suicide Prevention in Adult Correctional Facilities
Attachment A – DAI Incident Reporting Guidelines
Attachment B - After Action Review Format

**DEFINITIONS, ACRONYMS AND FORMS**

AAR – After Action Review

DAI – Division of Adult Institutions

DOC – Department of Corrections

DOC-2466B – Incident Information

Legislative contacts – Includes inquiries from legislative offices for information, requests for visits/tours, and invitations to legislators to attend or speak at DAI-sponsored events.

Serious suicide attempt – Self-harm attempt to intentionally end one's life that results in the need for emergency care, an emergency room visit or hospitalization.

WICS – Wisconsin Integrated Corrections System

**PROCEDURE**

I. **Incidents/Events**

A. Serious incidents, including but not limited to the following:
1. All escapes and escape attempts.
2. Incidents committed by inmates, such as:
   a. Homicides.
   b. Significant self-harm behavior.



   c. Suicides or serious suicide attempts.
   d. Sexual assaults.
   e. All staff or visitor assaults (see DAI Policy 300.00.70).
   f. Significant inmate on inmate assaults (see DAI Policy 300.00.70).
3. Major damage to state property (natural or intentional).
4. Bomb threat or explosion.
5. Use of force.
6. Serious injury to staff or inmates.
7. Death of an inmate.
8. Death of a staff member.
9. Major utility malfunctions that seriously impact normal facility operations, i.e., loss of water, loss of heat and loss of power.
10. Health threat that may affect the inmates or employees.
11. Employee job action.
12. Any other serious/unusual incidents to include natural disasters which have the potential of creating uncommon interest to the press and/or surrounding community.
13. Events involving media attention, labor relations' activities, or the involvement of elected/appointed officials.
14. Situations that significantly impact facility operations.

B. Events of Special Interest

Issues or events that may attract external attention to your operations, including but not limited to the following:
1. Release of a high profile inmate.
2. Transfer, court dates or incidents involving high profile inmates.
3. Erroneous release of an inmate.

II. **Procedure for Reporting Serious Incidents or Events of Special Interest**

A. Chain of Command
1. Staff who become aware of any serious incidents or circumstances that may result in special interest shall gather the necessary facts and report the incident immediately to their immediate supervisor.
2. If the immediate supervisor is not available, they shall follow the sequence established by each facility and/or office.

B. Reporting Serious Incidents to DAI Central Office
1. All serious incidents or events of special interest as defined in this policy shall be reported immediately to the DAI Administrator's office.
2. Incidents which occur after normal business hours shall be reported to the DAI Central Office Administrative Duty Officer per the on-call schedule.
3. A DOC-2466B generated from WICS shall be emailed as soon as possible to the "DOC DL DAI Incident Reporting Group" email distribution list. The email shall include a brief summary of the incident.

C. Completing an After-Action Review






1. Upon DAI request, facilities shall complete an AAR. The AAR shall contain the following information.
   a. Incident/Narrative section shall include one paragraph in narrative form.
   b. Incident/Event Details/Chronological section shall be a detailed breakdown of incident to include timeline and more specific incident details.
   c. The After-Action Evaluation and Review section shall include significant issues identified and/or lessons learned from the response.
   d. Corrective Action Plan section shall:
      i. Detail what the AAR identified as needing correction.
      ii. Designate staff responsibilities for corrective actions.
      iii. Determine due dates and note results.
   e. Appendix shall include: All additional documentation, video, pictures, etc.

III. **Legislative Contacts**

The following process for reporting legislative contacts is established in order to keep the DOC informed of areas of legislative interest and to ensure consistency in responding to legislative inquiries:

A. Facilities or other DAI staff who receive legislative inquiries shall immediately report the contact to the Legislative Liaison and DAI Administration.
   1. Information regarding the inquiry shall include, but is not limited to the following:
      a. Legislator or staff person and telephone number.
      b. DOC staff person contacted and telephone number.
      c. Subject/reason for contact.
      d. Disposition of the inquiry.
   2. The Legislative Liaison may be contacted by telephone at (608) 240-5056. If the Legislative Liaison is not available or the contact occurs during non-business hours, leave the information on voice mail or send an email.

B. The Legislative Liaison shall respond to inquiries relating to serious incidents, issues or events that may generate special interest or legislative and budget issues that deal with what the DOC's position on a certain issue will be.

C. The only exception to this reporting policy would be for routine questions such as the sentence structure, county of commitment or place of imprisonment of an inmate.

D. Legislative attendance at Community Relations/Advisory Board meetings shall be reported to the Legislative Liaison by the next business day.

[Exhibit#1]

DOC-1024 (Rev. 02/2009)

**DIVISION OF ADULT INSTITUTIONS FACILITY IMPLEMENTATION PROCEDURES**

| **Facility:** Name | | |
|---|---|---|
| **Original Effective Date:** 00/00/00 | **DAI Policy Number:** 300.00.71 | **Page** 5 of 5 |
| **New Effective Date:** 00/00/00 | **Supersedes Number:** 300.00.71 | **Dated:** 02/01/17 |
| **Chapter:** 300 Administrative | | |
| **Subject:** Reporting Serious Incidents, Events of Special Interest and Legislative Inquiries | | |
| **Will Implement** ☐ As written ☐ With below procedures for facility implementation | | |
| **Warden's/Center Superintendent's Approval:** | | |

**REFERENCES**

**DEFINITIONS, ACRONYMS, AND FORMS**

**FACILITY PROCEDURE**

I.
- A.
- B.
  - 1.
  - 2.
    - a.
    - b.
    - c.
  - 3.
- C.

II.

III.

**RESPONSIBILITY**

I. Staff

II. Inmate

III. Other

Case 2:23-cv-01233-WED Filed 09/19/23 Page 3 of 24 Document 1-1



Wisconsin Department of Justice
DJ-LS-25 (Rev. 2/17)

[1 of 4 Page]

[Exhibit#2: 1 of 4]

# STATE OF WISCONSIN
# NOTICE OF INJURY AND CLAIM
Pursuant to Wis. Stat. Section 893.82

**This notice must be served upon the Attorney General by certified mail within 120 days of the event giving rise to the claim for such injury, damage or death at 114 East State Capitol, Madison, Wisconsin 53707-7857.**

Claimant's Name: Terrance Prude #335474

Address: Green Bay Corr. Inst. P.O. Box 19033 Green Bay, WI 54307

Phone:

Time and Date of Occurrence: 12/10/22 thru 4/29/23 ~~[illegible]~~ (Approximately)

Location: Green Bay Correctional Institution

**Statement of Circumstances Giving Rise to the Claim for Such Injury, Damage or Death and Names of Persons Involved, Including Name(s) of State Officer(s), Agent(s) or Employee(s).**

On the times/dates indicated above Correctional Officer Candice Dixon pulled me to the side and told me that she Knew of a credible/corroborated threat to stab me. When asked the name of the person who was supposed to stab me she told me an inmate name [redacted] Titus Henderson. Dixon told me the threat was credible and that she would notify the Security Director John Kind about Henderson's plot to stab me (and potentially Kill me). All security staff and John Kind denied that Dixon informed security staff of this threat to stab me. DAI Policy

(If additional space is needed, continue on backside of this notice form.)

I certify and solemnly swear that the above-described injury, damage or death actually occurred, that I have read the above foregoing notice of injury and claim, and that the same is true to my own knowledge except as to those matters stated upon information and belief and as to those matters, I believe the same to be true.

Date: 5/4/2023

Signature of Claimant

State of Wisconsin
County of BROWN

Subscribed and sworn to before me this 4th day of MAY, 20 23, by TERRANCE PRUDE.

Notary Public, State of Wisconsin
My Commission: MAY 01, 2027



Wisconsin Department of Justice
DJ-LS-25 (Rev. 2/17)

[2 of 4 Page]

[Exhibit#2: 2 of 4]

STATE OF WISCONSIN
# NOTICE OF INJURY AND CLAIM
Pursuant to Wis. Stat. Section 893.82

**This notice must be served upon the Attorney General by certified mail within 120 days of the event giving rise to the claim for such injury, damage or death at 114 East State Capitol, Madison, Wisconsin 53707-7857.**

| Claimant's Name | | |
|---|---|---|
| Terrance Prude #335878 | | |
| Address: P.O. Box 19033 Green Bay Corr. Inst. Green Bay, WI 54307 | | Phone |
| Time and Date of Occurrence: 12/10/23 thru 4/29/23 (Approximately) | Location: Green Bay Corr. Inst. | |

**Statement of Circumstances Giving Rise to the Claim for Such Injury, Damage or Death and Names of Persons Involved, Including Name(s) of State Officer(s), Agent(s) or Employee(s).**

300.00.71 II. A. 1.-2. mandates a duty to report which made the duty "ministerial", not discretionary. The policy states: "Staff who becomes aware of any serious incidents or circumstances that may result in special interest shall gather the necessary facts and report the incident immediately to their immediate supervisor. ... If the immediate supervisor is not available, they shall follow the sequence established by each facility and/or office." Officer Dixon did not follow this mandatory procedure. As a result, I was stabbed by Titus Henderson on 3/11/2023 in my neck & had to be taken off ground to the

(If additional space is needed, continue on backside of this notice form.)

I certify and solemnly swear that the above-described injury, damage or death actually occurred, that I have read the above foregoing notice of injury and claim, and that the same is true to my own knowledge except as to those matters stated upon information and belief and as to those matters, I believe the same to be true.

Date: 5/4/2023

[signature]
Signature of Claimant

State of Wisconsin
County of BROWN

Subscribed and sworn to before me this 4TH day of MAY, 2023, by TERRANCE PRUDE.

[signature]
Notary Public, State of Wisconsin
My Commission: MAY 01, 2027



Wisconsin Department of Justice
DJ-LS-25 (Rev. 2/17)



[Exhibit#2: 3 of 4]

STATE OF WISCONSIN
NOTICE OF INJURY AND CLAIM
Pursuant to Wis. Stat. Section 893.82

**This notice must be served upon the Attorney General by certified mail within 120 days of the event giving rise to the claim for such injury, damage or death at 114 East State Capitol, Madison, Wisconsin 53707-7857.**

Claimant's Name: Terrance Prude #335878

Address: Green Bay Corr. Inst. P.O. Box 19033 Green Bay, WI 54307

Phone:

Time and Date of Occurrence: 12/10/23 thru 4/29/23 (Approximately)

Location: Green Bay Correctional Institution

**Statement of Circumstances Giving Rise to the Claim for Such Injury, Damage or Death and Names of Persons Involved, Including Name(s) of State Officer(s), Agent(s) or Employee(s).**

hospital St. Vincent where I had to have surgery to remove the weapon from my neck. Had Dixon followed the procedure, which is a "ministerial duty", I would not have gotten stabbed nor would I have been moved to the unit where Titus Henderson was housed at. Dixon did nothing with the information she, herself, called a "credible" threat to my life. Claim#1

Relief Sought: I seek $50,000 in compensatory damage. I seek $10,000 in emotional & mental damages as a result of being stabbed. I'm suing officer Dixon in her

(If additional space is needed, continue on backside of this notice form.)

I certify and solemnly swear that the above-described injury, damage or death actually occurred, that I have read the above foregoing notice of injury and claim, and that the same is true to my own knowledge except as to those matters stated upon information and belief and as to those matters, I believe the same to be true.

Date: 5/4/2023

Signature of Claimant

State of Wisconsin
County of BROWN

Subscribed and sworn to before me this 4th day of MAY, 2023, by TERRANCE PRUDE.

Notary Public, State of Wisconsin
My Commission: MAY 01, 2027



Wisconsin Department of Justice
DJ-LS-25 (Rev. 2/17)

[Exhibit#2:4 of 4]

# STATE OF WISCONSIN
# NOTICE OF INJURY AND CLAIM
Pursuant to Wis. Stat. Section 893.82

**This notice must be served upon the Attorney General by certified mail within 120 days of the event giving rise to the claim for such injury, damage or death at 114 East State Capitol, Madison, Wisconsin 53707-7857.**

Claimant's Name: Terrance Prude #335878

Address: P.O. Box 19033 Green Bay Corr. Inst. Green Bay, WI 54307

Phone:

Time and Date of Occurrence: 12/10/23 thru 4/29/23 [redacted] (Approximately)

Location: Green Bay Correctional Institution

**Statement of Circumstances Giving Rise to the Claim for Such Injury, Damage or Death and Names of Persons Involved, Including Name(s) of State Officer(s), Agent(s) or Employee(s).**

Individul Capacity only. Dixon's negligence contributed to me getting stabbed in my neck. Had she followed her mandatory ministerial duty to report, the threat to my life would have been prevented. [redacted] The duty to report was absolute, certain and imperative and involved mere performance of specific task. See Santiago v. Ware, 205 Wis. 2d 295, 338 (1996) (Headnotes: 15 & 16). I'm told that Ms. Dixon has now been fired rooted from these allegations (I have not confirm this but it is confirm that

(If additional space is needed, continue on backside of this notice form.) She has been fired).

I certify and solemnly swear that the above-described injury, damage or death actually occurred, that I have read the above foregoing notice of injury and claim, and that the same is true to my own knowledge except as to those matters stated upon information and belief and as to those matters, I believe the same to be true.

Date: 5/4/2023

[signature]
Signature of Claimant

State of Wisconsin
County of BROWN

Subscribed and sworn to before me this 4th day of MAY, 2023, by TERRANCE PRUDE.

[signature]

Notary Public, State of Wisconsin
My Commission: MAY 01, 2027

Tracking Number:

70200090000105647052

Copy   Add to Informed Delivery

[Exhibit #3]

**Latest Update**

Your item has been delivered and is available at a PO Box at 8:44 am on May 24, 2023 in MADISON, WI 53708.

Get More Out of USPS Tracking:

USPS Tracking Plus®

**Delivered**
Delivered, PO Box
MADISON, WI 53708
May 24, 2023, 8:44 am

**Redelivery Scheduled for Next Business Day**
MADISON, WI 53703
May 20, 2023, 1:06 pm

**Redelivery Scheduled for Next Business Day**
MADISON, WI 53703
May 20, 2023, 10:41 am

**Out for Delivery**
MADISON, WI 53703
May 20, 2023, 9:05 am

**Arrived at Post Office**
MADISON, WI 53703
May 20, 2023, 8:54 am

**Departed USPS Regional Facility**
MADISON WI DISTRIBUTION CENTER
May 19, 2023, 11:59 pm

**Arrived at USPS Regional Facility**
MADISON WI DISTRIBUTION CENTER
May 19, 2023, 8:17 am

**In Transit to Next Facility**
May 18, 2023

**Departed USPS Regional Facility**
MILWAUKEE WI PROCESSING CENTER
May 16, 2023, 11:59 pm

**Arrived at USPS Regional Facility**
MILWAUKEE WI PROCESSING CENTER
May 16, 2023, 2:35 pm

**Departed USPS Regional Facility**
GREEN BAY WI DISTRIBUTION CENTER
May 12, 2023, 10:57 pm

**Arrived at USPS Regional Facility**
GREEN BAY WI DISTRIBUTION CENTER
May 12, 2023, 6:52 pm

7020 0090 0001 0564 7052

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee $ 4.15

Extra Services & Fees *(check box, add fee as appropriate)*
- ☐ Return Receipt (hardcopy) $
- ☐ Return Receipt (electronic) $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required $
- ☐ Adult Signature Restricted Delivery $

Postage $ —

Total Postage and Fees $ 4.15

Postmark Here — Mailed 5-12-23

Sent To: Attorney General's Office

Street and Apt. No., or PO Box No.: 114 East State Capitol

City, State, ZIP+4®: Madison, WI 53707-7857

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

# ICE RECEIPT
# COMPLAINT NUMBER GBCI-2023-4121
# * * * ICRS CONFIDENTIAL * * *

---

**To:** PRUDE, TERRANCE D. - #335878
UNIT: SG-4W -- _423-LO
GREEN BAY CORRECTIONAL INSTITUTION
P.O. Box 19033
GREEN BAY, WI 54307-9033




**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 03/23/2023 |
| Date Complaint Received: | 03/23/2023 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Failure to protect from attack by another PIOC |

This is to acknowledge the complaint you filed which was received on the date indicated. Depending on the nature of the complaint, you may or may not be interviewed by the ICE. A recommendation on the complaint will be made and submitted to the appropriate reviewing authority within 30 days of acknowledgement. A decision will be made by the appropriate reviewing authority within 15 days following receipt of the recommendation unless extended for cause.

**Please write to the ICE if this issue is resolved before you receive an answer.**

[2 of 6]

# ICE REPORT
# COMPLAINT NUMBER GBCI-2023-4121
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: SO-_E -- _E63-UP
GREEN BAY CORRECTIONAL INSTITUTION
P.O. Box 19033
GREEN BAY, WI 54307-9033




**Complaint Information:**

Date Complaint Acknowledged: 03/23/2023

Inmate Contacted? No

Date Complaint Received: 03/23/2023

Subject of Complaint: 1 - Staff

Brief Summary: Failure to protect from attack by another PIOC

Summary of Facts: Inmate Prude complains that staff failed to protect him from an attack. He states that In December or January, Officer Dixon told him that there was an inmate in the south cell hall named Henderson that was going to stab him. She stated that she was going to tell Mr. Kind. In February, he was moved to G-57 which was closer to Henderson. On 03/11/23, he was called to HSU with two other inmates he did not know. He states that he ended up being stabbed by Henderson.

Officer Dixon no longer works for the DOC so I am not able to contact her. She did not submit an incident report. Mr. Kind stated that Officer Dixon never said anything to him. Inmate Prude never wrote security regarding Inmate Henderson which he should have if officer Dixon did tell him the information and he was concerned for his safety. Inmate Prude does not have any restriction that he could not be housed by Inmate Henderson. After the incident, Capt. Cushing tried to investigate the incident but Inmate Prude refused to talk to him. This would have been a good time to ask about the information Officer Dixon told him.

Recommendation: Dismiss

ICE Recommendation: Dismissed

Recommendation Date: 05/17/2023

A. DeGroot - Institution Complaint Examiner

[3 of 6]



# REVIEWING AUTHORITY'S DECISION
# COMPLAINT NUMBER GBCI-2023-4121
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: SO-_E -- _E63-UP
GREEN BAY CORRECTIONAL INSTITUTION
P.O. Box 19033
GREEN BAY, WI 54307-9033

[Exhibit #5]

**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 03/23/2023 |
| Date Complaint Received: | 03/23/2023 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Failure to protect from attack by another PIOC |
| ICE's Recommendation: | Dismissed |
| Reviewer's Decision: | Dismissed |
| Decision Date: | 05/19/2023 |

Chris Stevens

C. Stevens - Warden

CC:

**Distributed via email**
Kind, J
Haese, M

A complainant dissatisfied with a decision may, within 14 days after the date of the decision, appeal that decision by filing a written request for review with the Corrections Complaint Examiner on form DOC-405 (DOC 310.12, Wis. Adm. Code).

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-405A (Rev. 04/18)

WISCONSIN
Administrative Code
Chapter DOC 310

# CCE RECEIPT
# COMPLAINT NUMBER GBCI-2023-4121
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: SO-_E -- _E63-UP
GREEN BAY CORRECTIONAL INSTITUTION
P.O. Box 19033
GREEN BAY, WI 54307-9033




**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 05/12/2023 |
| Date Appeal Received: | 05/12/2023 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Failure to protect from attack by another PIOC |

Your request for review has been received.

The Corrections Complaint Examiner (CCE) has 35 days to submit a recommendation to the Office of the Secretary (OOS) for Review. The OOS has 45 days to make a decision after receiving the CCE's report. The OOS may extend the time for making a decision for cause and upon notice to all interested parties.

If you do not receive a decision or other notices within that time, you may write directly to:

Secretary of the Department of Corrections
Post Office Box 7925
Madison, WI 53707-7925

# CCE REPORT
# COMPLAINT NUMBER GBCI-2023-4121
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: SO-_G -- _G57-LO
GREEN BAY CORRECTIONAL INSTITUTION
P.O. Box 19033
GREEN BAY, WI 54307-9033

[Exhibit #5]

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 05/12/2023 |
| Date Appeal Received: | 05/12/2023 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Failure to protect from attack by another PIOC |
| Method of Disposition: | Review on Record? Yes     Investigation? No |
| Document(s) Relied Upon: | Complaint, correspondence, WICS disciplinary record, incident reports, SPN concerns, appeal |
| CCE's Recommendation: | Dismissed |
| | The institution addressed the complaint. The complainant is encouraged to report concerns to security immediately, and cooperate with security inquiries. |
| Recommendation Date: | 05/19/2023 |

E. Davidson - Corrections Complaint Examiner

[6 of 6]



# OFFICE OF SECRETARY DECISION
# COMPLAINT NUMBER GBCI-2023-4121
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: SO-_G -- _G57-LO
GREEN BAY CORRECTIONAL INSTITUTION
P.O. Box 19033
GREEN BAY, WI 54307-9033

[Exhibit #5]

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 05/12/2023 |
| Date Appeal Received: | 05/12/2023 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Failure to protect from attack by another PIOC |
| OOS Decision: | Dismissed |
| Decision Comments: | The following is the Secretary's decision on the Corrections Complaint Examiner's recommendation of 05/19/2023 in the above appeal: The attached Corrections Complaint Examiner's recommendation to DISMISS this appeal is accepted as the decision of the Secretary. |
| Decision Date: | 05/26/2023 |

[signature]

C. O'Donnell - Office of the Secretary

FILED
07-05-2023
Clerk of Circuit Court
Brown County, WI
2023CF001156
Honorable Kendall M. Kelley
Branch 4

**STATE OF WISCONSIN** **CIRCUIT COURT BRANCH** **BROWN COUNTY**

STATE OF WISCONSIN
Plaintiff,

vs.

**TITUS HENDERSON**
Green Bay Correctional Institution
P.O. Box 19033
Green Bay, WI 54307
DOB: 11/25/1975
Sex/Race: M/B
Eye Color: Brown
Hair Color: Black
Height: 5 ft 11 in
Weight: 175 lbs

Defendant.

DA Case No.: 2023BR003584
Assigned DA: David L. Lasee
Agency Case No.: 23-008708
Court Case No.: 23CF

[Exhibit#6]

**CRIMINAL COMPLAINT**

*For Official Use*

Complainant, John Luetscher, Assistant District Attorney for Brown County, being first duly sworn on oath, deposes and says that:

**Count 1: AGGRAVATED BATTERY, USE OF A DANGEROUS WEAPON, REPEATER - SERIOUS VIOLENT CRIME, REPEATER**

The above-named defendant, on or about Saturday, March 11, 2023, in the Village of Allouez, Brown County, Wisconsin, did cause great bodily harm to TDP, by an act done with intent to cause great bodily harm to that person, contrary to sec. 940.19(5), 939.63(1)(b), 939.619(2), 939.62(1)(c) Wis. Stats., a Class E Felony, and upon conviction may be fined not more than Fifty Thousand Dollars ($50,000), or imprisoned not more than fifteen (15) years, or both.

And further, invoking the provisions of sec. 939.63(1)(b) Wis. Stats., because the defendant committed this offense while using a dangerous weapon, the maximum term of imprisonment for the felony may be increased by not more than 5 years.

And further, invoking the provisions of sec. 939.619(2) Wis. Stats., because the defendant was convicted of a previous serious violent crime or a crime punishable by life imprisonment, First Degree Reckless Homicide on or about 7/14/1995 in Racine County, which conviction remains of record and unreversed, the court shall impose a bifurcated sentence under s. 973.01. The term of confinement in prison portion of a bifurcated sentence imposed under this subsection may not be less 5 years, but otherwise the penalties for the crime apply, subject to any applicable penalty enhancement. The court may not place the defendant on probation.

And further, invoking the provisions of sec. 939.62(1)(c) Wis. Stats., because the defendant is a repeater, having been convicted of Battery by a Prisoner on or about 8/9/2013 in Grant County, which conviction(s) remain of record and unreversed, the maximum term of imprisonment for the underlying crime may be increased 6 years if the prior conviction was for a felony.

**Count 2: FIRST DEGREE RECKLESSLY ENDANGERING SAFETY, REPEATER, USE OF A DANGEROUS WEAPON**

The above-named defendant, on or about Saturday, March 11, 2023, in the Village of Allouez, Brown County, Wisconsin, did recklessly endanger the safety of TDP, under circumstances which show utter disregard for human life, contrary to sec. 941.30(1), 939.62(1)(c), 939.63(1)(b) Wis. Stats., a Class F Felony, and upon conviction may be fined not more than Twenty Five Thousand Dollars ($25,000), or imprisoned not more than twelve (12) years and six (6) months, or both.

And further, invoking the provisions of sec. 939.62(1)(c) Wis. Stats., because the defendant is a repeater, having been convicted of Battery by a Prisoner on or about 8/9/2013 in Grant County, which conviction(s) remain of record and unreversed, the maximum term of imprisonment for the underlying crime may be increased 6 years if the prior conviction was for a felony.

And further, invoking the provisions of sec. 939.63(1)(b) Wis. Stats., because the defendant committed this offense while using a dangerous weapon, the maximum term of imprisonment for the felony may be increased by not more than 5 years.

Complainant is an Assistant District Attorney with the Brown County District Attorney's Office and knows of the above offenses on information and belief based upon:

**PROBABLE CAUSE:**

The complainant, being duly sworn on oath, swears that he has had the opportunity to review the police reports from Sergeant O'Connell of the Brown County Sheriff's Office, and other documents supporting this complaint referenced herein, which are the types of reports and documents kept in the ordinary course of business, which complainant believes to be truthful and reliable because they have proven to be truthful and reliable on numerous occasions in the past.

The complainant further asserts that based upon his review of the referenced reports and/or supporting documents, the incidents alleged occurred in the Village of Allouez, Brown County, Wisconsin.

1. Complainant's review of the report of Sergeant O'Connell, a summary of which indicates the following:

On Monday, 03-13-23, I, Sgt. Jason O'Connell #281, was assigned to conduct a follow-through investigation regarding Brown County Sheriff's Office (BRSO) case #23-008708. All times are approximate.

I reviewed the initial incident report completed by Dep. Jacob Frye #1367 and learned the following:

Dep. Frye was dispatched to a medical call at Green Bay Correctional Institution (GBCI), 2833 Riverside Dr., Village of Allouez, Brown County, WI, on Saturday, 03-11-23, at 1:09 p.m. According to the call notes, this involved a fight between two inmates where one of the inmates was stabbed. Dep. Frye spoke to GBCI Lt. Alejandra Mejia and was told that there was a fight between Inmate **Titus (NMI) Henderson (DOB 11-25-75/DOC# 00299317**) and Inmate TDP (DOC# 00335878). Lt. Mejia said that Inmate Henderson stabbed Inmate TDP in the neck with

a pen during the fight, that Inmate TDP was walking and talking after being stabbed, and that he had since been transported to the hospital. Lt. Mejia told Dep. Frye that photos of the scene had been taken and that the scene had already been cleaned up. This concluded Dep. Frye's involvement.

2. Complainant's review of the supplemental report of Sergeant O'Connell, a summary of which indicates the following:

On 03-14-23, at 3pm, I traveled to GBCI to speak with prison administration and involved inmates regarding this case. Sgt. Mark Hackett accompanied me to assist.

Upon arrival at GBCI, I spoke with GBCI Investigative Capt. Daniel Cushing. In short, Capt. Cushing told me that Inmates Henderson and TDP were escorted from the general population building to the Treatment Center building to see Health Services Unit (HSU) staff for their respective medical needs. Capt. Cushing said another inmate, DEA, was also being escorted to HSU with them. Capt. Cushing said that Inmate TDP was actually unaware of why he was being escorted to HSU on this occasion. Once in the HSU waiting room, a fight broke out between Inmates Henderson and TDP where Inmate TDP was stabbed in the neck with a pen. Capt. Cushing stated a portion of the pen broke off in Inmate TDP's neck and the other portion of the pen was collected as evidence. Capt. Cushing showed me a video of the fight/stabbing incident and I saw that Inmate Henderson, seemingly unprovoked, suddenly made repeated stabbing motions at Inmate TDP's neck. The fight turned into punches being thrown and grappling, and then corrections staff intervened to end it. A more thorough account of what occurred will be described once I obtain the video and can review it closer. Capt. Cushing stated Inmate TDP was taken to St. Vincent Hospital where he stayed until 03-12-23. Capt. Cushing stated he has since tried to speak with Inmate TDP, but that he would not speak about the incident and was not going to be willing to talk to law enforcement either. In his office, Capt. Cushing pointed out Inmate TDP's DOC photo on his prison gang member bulletin board and I saw that Inmate TDP's DOC photo was at the top of the Gangster Disciples (GD) column. Capt. Cushing said Inmate Henderson spoke to him at length about the incident, claimed it was self-defense, and that he'd likely speak with law enforcement. Capt. Cushing showed me the request forms where Inmates TDP and Henderson requested to be seen by HSU. Inmate Henderson's request was handwritten, and he was asking to be seen for possible COVID symptoms. Inmate TDP's request was typed and according to the request, he too was asking to be seen for possible COVID symptoms. Capt. Cushing stated inmates have access to typewriters.

Capt. Cushing then arranged for me to speak with involved inmates regarding this case, and those details will follow.

3. Complainant's review of the supplemental report of Sergeant O'Connell, a summary of which indicates the following:

On 03-14-23, I met with Inmate Henderson and attempted to meet with Inmate TDP in the Restricted Status Housing Unit (RSHU) at GBCI. I advised staff that I wanted to meet with Inmate TDP first. Sgt. Mark Hackett accompanied me to assist. I began a recording on my BWC of the impending interview at 3:58 p.m. GBCI staff escorted Inmate Henderson into the meeting room and stated that Inmate TDP was refusing to come speak to me.

I introduced myself to Inmate Henderson and I saw that he was the same person that I previously viewed on a WI DOC mugshot. Inmate Henderson also verified his birthday for me. I explained that I wanted to talk to him about an incident that occurred on Saturday. Inmate

Henderson stated he was willing to speak with me. I read Inmate Henderson his *Miranda* Rights directly off the Brown County Sheriff's Office Rights Form, he stated he understood his rights, and he signed the form (see attached). Inmate Henderson then provided me with the following information:

"I have been in inmate at GBCI at since 01-25-19. Prior to that, I spent some time at Boscobel Prison and I got to know Inmate [TDP]. We used to study law together and I helped [TDP] understand how to file lawsuits. Eventually we both got transferred to GBCI. I got transferred to GBCI from Waupun Correctional. I believe I was transferred to GBCI because I was helping inmates advocate for their rights and prison staff at Waupun did not like it. [TDP] was also at Waupun when I was there and I found out he wanted to "fuck me up" or jump me when we were there together. I have no idea why this was. I know [TDP] is a member of the Gangster Disciples (GD) gang.

Eventually, when we were at GBCI together, I felt intimidated about [TDP] being there too and some of the arguing and statements he previously made to me. I also did not like that he was in a gang and had fellow gang members in prison with him. I am not a member of a gang.

Sometime in 2020, I submitted a keep separate request to GBCI staff to be kept away from [TDP]. This request was denied. In June/July 2021, I submitted another keep sperate request to be kept away from [TDP] but I never heard what the result of this was.

In January/February 2023, [TDP] was moved from the north cell hall to the south cell hall (where I was housed). We were not in the same cell but we had the propensity to run into each other more often. In February 2023, I saw [TDP] in the showers and I tried to be cool with him and ask him if there was any issues between us. [TDP] was confrontational with me and I just left it alone. I left the shower area but [TDP] approached me with his GD friends and stated he didn't have any issues with me but "but could stand on a motherfucker alone," meaning he could fight me alone.

I started to hear from other inmates that [TDP] was going to "fuck me up" and kill me. [TDP]'s confrontational attitude continued about 3 more times when I'd see him in the shower area and I began to think it was really true about what other inmates were saying.

On Thursday 03-09-23 or Friday 03-10-23, I put in a request to be seen by HSU for possible COVID symptoms. On Saturday, 03-12-23, I was escorted to HSU in the treatment building as a result of this request. There were two other inmates being escorted to HSU with me: [TDP] and DEA were the other two inmates that went to HSU with me. CO Mitchler got us assembled in the rotunda and CO Weyker escorted us to HSU. [TDP] told me he had a meeting with Lt. Mejia on Friday and she asked him about how we were doing. This info made me wonder of Lt. Mejia was responsible for us going to HSU together. I felt maybe she was setting us up to fight.

Once we got into the HSU building, DEA and I went straight into the waiting room. [TDP] did not come into the waiting room immediately and it made me wonder of he was looking around for cameras and to see if anyone would see him potentially try to attack me. I was also concerned because I knew DEA was also a GD and may be along to help [TDP] attack me. I was standing near the entry door to the waiting room and then saw [TDP] come in. As [TDP] was closing the door behind him, he stated, "I outa kill you with this razor blade," and I saw [TDP]'s right hand start to raise up. At this time, [TDP] was about 3 ft. from me. I did not see anything in his hand but this was very quick and I was immediately worried about him going after my neck with a razor blade. I felt he was about to try and kill me. All I had was a pen in my waistband. I grabbed the pen and wanted to defend myself from possibly being cut in the

neck. I thrusted the pen towards [TDP]. I was not aiming for any particular part of his body. I don't know what part of the pen was pointed at [TDP]. It happened so quick that I only wanted to make some kind of move to defend myself and I was not aiming at any particular body part with the pen. Punches were then thrown between the both of us. I believe I threw [TDP] on the ground. I believe I heard the COs yelling, "get him on the ground." I believe a food cart got between us. At some point, COs sprayed pepper spray at me. I then got on the ground and CO's took me to RSHU.

My intentions of thrusting the pen towards [TDP] was to defend myself against what I thought was an impending attack on me. I am currently worried about retaliation now due to [TDP] being a GD and I did hear last night that [TDP] was talking to his GD friends about killing me once we get back to general population. I believe I twisted my right leg during this fight and my right thumb was swollen. I never filled out a request, pretending to be [TDP], in order to get him to go to HSU with me. END OF STATEMENT"

At the conclusion of the interview, I generated a 2-page typed statement based on the information provided to me by Inmate Henderson. Inmate Henderson and I then reviewed the statement for accuracy, making changes as needed. Inmate Henderson confirmed that the statement was given of his own free will and no force, threats, or promises were made to him to obtain this statement. Inmate Henderson also confirmed that the statement was true and accurate to the best of his knowledge and signed the statement, noting the date and time.

4. Complainant's review of the supplemental report of Sergeant O'Connell, a summary of which indicates the following:

On 04-05-23 at 12:37pm, I traveled to GBCI to pick up video, photos, documents, and evidence for this case. I met with Capt. Cushing and he handed over a black USB drive and a sealed, clear plastic bag containing pieces of a broken pen. I also later received via email copies of the health service request (HSR) forms for Inmates Henderson and TDP. I returned to the sheriff's office and reviewed the materials I was provided.

I reviewed the seven GBCI staff incident reports and found that they were completed by CO Craig Christensen, CO Craig Nemetz, CO Isaac Buhle, Sgt. Aaron Kloehn, Sgt. Drew Weycker, Sgt. Justin Segerstrom, and Lt. Alejandra Mejia.

The narrative of CO Christensen's incident report is as follows:

"On said date and approximate time I CO Christensen was working my assigned post in the Treatment Center when Inmate Henderson #299317 and Inmate [TDP] #335878 arrived on the unit under the escort of Sgt. Weycker for appointments to see the health nurse. The inmates were directed to go have a seat in the waiting room until the nurse was ready to see them. Both inmates entered the waiting room and then quickly came back out into the vestibule struggling in a physical altercation with one another. Myself, along with Officer Nemetz and Sergeant Weycker responded to the situation and all gave them verbal directives to stop fighting. After neither inmate complied and continued the physical altercation, Officer Nemetz and Sgt. Weycker issued a controlled burst of OC from their MKIII canisters towards their forehead areas. Shortly after, the agents gained their desired effects and the inmates separated. I observed Inmate Henderson lay face down on the floor in the vestibule near the Step Unit shower cell. Sgt. Weycker was able to quickly stabilize him to the floor and apply handcuffs. Simultaneously, Inmate [TDP] walked back into the waiting room. Myself along with Officer Nemetz followed him into the waiting room and directed him to place his hands behind his back, which he complied. Officer Nemetz then placed handcuffs on him and we escorted

him to the holding cell on the Transition side of the unit. At this point, I noticed [TDP] was bleeding significantly somewhere near his chin or neck area. Lt. Mejia arrived on the scene with other responding staff and took over the escorting of the two inmates involved. I was notified by Lt. Mejia that it appeared a weapon was involved, so I immediately went back to the area of the altercation to secure and search the area. I was able to find four broken plastic pieces of a pen about 2-3 inches long laying on the floor near where Inmate Henderson was laying at the end of the altercation. There was also a wad of tightly compressed toilet paper laying next to the broken pieces of pen. From my training and over 16 years of experience as a Correctional Officer, I can say with certainty that the toilet paper wad was likely used as a makeshift handle around the pen to create a better grip on the homemade stabbing device. I later observed EMT's exiting the Treatment Center with Inmate [TDP] on a gurney. I observed Inmate [TDP] had an object lodged in his left neck area, which appeared to me to be another broken part of a pen, which would also be consistent with what I found. I secured the objects and brought them to the security office. Photos were taken of the objects and they were turned over to Lt. Matushak to be secured in the evidence locker for the Brown County Sherriff's Office. A DOC-1445 Evidence Chain of Custody was filled out for the weapon involved."

CO Buhle's incident report indicated that he assisted in escorting Inmate Henderson to RSHU after the altercation. CO Buhle asked Inmate Henderson what happened and Inmate Henderson replied that he got word that people were going to jump him so he wanted to get ahead of that and attacked Inmate TDP.

Lt. Mejia's incident report, in part, contains information on her administrative and supervisory duties for the incident. Lt. Mejia reported, "It was noticed that TDP had a foreign object impaled on his neck. The object was on the left side of his neck just below the cheek bone." Lt. Mejia indicated that the object appeared to be plastic, but it was unclear what it was. Lt. Mejia indicated that she called to have an ambulance respond for Inmate TDP. Lt. Mejia further reported, "Inmate TDP was asking why he was on the unit. TDP was informed that he was in the TC for sick call due to his health service request slip. TDP stated that he did not request to be seen by HSU. TDP was requesting to see the health service request slip because he did not write one." Lt. Mejia reported that the remainder of the weapon was located in broken pieces by CO Christensen, that it was identified as a pen, and that Sgt. Christensen collected the pieces and secured them into evidence.

I reviewed the Health Service Request (HSR) forms for Inmates Henderson and TDP. Inmates complete these forms when they want to be seen by HSU staff for medical, mental health, dental, or optical needs.

I could see that Inmate TDP's HSR form was filled in with typed print. It was dated 03-10-23 and the description of the services desired was, "I am having problems breathing, pain in lungs. I sweat regularly, headaches, throat pain. I need medication. COVID 19."

I could see that Inmate Henderson's HSR form was filled in with handwriting. It was dated 03-10-23 and the description of the service desired was, "I request medicine for COVID-19. Pain in chest + lung when breathing. Headaches are bad + sweating."

It should be noted that when Capt. Cushing provided me the copies of these HSR forms, he stated that inmates know that when they disclose COVID symptoms and/or request to be seen by HSU staff for anything related to COVID, that it's an automatic trip to HSU without any question of whether it's a legitimate request. I asked Capt. Cushing about any print ribbon that Inmate Henderson had, either installed into his typewriter, or anywhere in his cell. Capt. Cushing told me that he went through the entire print ribbon from Inmate Henderson's

typewriter, but did not locate anything on that print ribbon that matched what was typed on Inmate TDP's HSR form. Capt. Cushing said there was another print ribbon located in Inmate Henderson's cell, but it was sealed in packaging.

At this point it is unclear who completed the HSR form for Inmate TDP, but it's clear that he made no such request to be seen by HSU. This is evidence that someone other than Inmate TDP completed the HSR form and that it was a possible ploy to get him in a position to be assaulted. The HSR forms were uploaded to this case.

I lastly reviewed the video of this incident that was provided by GBCI. The video runs through 4 separate camera views in the Treatment Center. As the video plays, all 4 camera views are depicted and played in the video player simultaneously. There is no audio associated to this video. According to the date and timestamp, the video begins on 03-11-23 at 12:44:02pm and ends on 03-11-23 at 12:53:40pm. The 4 camera labels and descriptions are as follows:

- Camera Label: TC012 / Description: HSU Waiting Room
- Camera Label: TC015 / Description: Treatment Center Hall
- Camera Label: TC016 / Description: Treatment Center Interior Entry Area
- Camera Label: TC033 / Description: Treatment Center Vestibule to HSU Waiting Room

At the start of the video, at 12:44:02pm, I'm able to see three inmates who I've previously identified via personal contact and/or from viewing WI DOC mugshots. Inmate TDP is in the Treatment Center entry area talking to corrections staff. This is consistent with reports that Inmate TDP was asking staff why he was being brought to HSU when he made no such request. Inmates DEA and Henderson are in the Treatment Center vestibule and walk into the HSU waiting room. Inmate DEA is wearing a grey t-shirt and green pants, Inmate TDP is wearing a gray sweatshirt and green pants, and Inmate Henderson is wearing a green jacket, green pants, and a tan t-shirt. As Inmate Henderson walks through the Treatment Center vestibule towards the HSU waiting room door, I'm able to see white tissue or toilet paper in his right hand. On the HSU waiting room camera, I see Inmate DEA enter the room and then Inmate Henderson walks in shortly thereafter. Inmate DEA positions himself in the room near a wall opposite of the door he walked in. Inmate Henderson walks into the waiting room, but stands close to the door he just walked through. Inmate Henderson still has the white tissue in his right hand and his left hand is in his left jacket pocket. As inmate Henderson stands by the doorway, his left hand comes out of his jacket pocket and both his hands come together in front of his abdomen area. I'm unable to see what, if anything, is in Inmate Henderson's left hand, but he wraps the tissue around something. These motions would be consistent with Inmate Henderson wrapping the tissue around a pen so as to use it as a makeshift handle for the pen. Inmates DEA and Henderson appear to speak briefly during this time. Inmate Henderson remains near the doorway. Inmate TDP walks through the Treatment Center vestibule and towards the doorway to the HSU waiting room. As Inmate TDP walks through this area, there is nothing in his hands and he walks casually with his hands by his sides. As Inmate TDP enters the HSU waiting room, Inmate Henderson is still just inside the doorway with the left side of his body facing the doorway, and Inmate DEA is about 8 ft away from Inmate Henderson, looking in the direction of the doorway.

On the HSU waiting room camera, I'm able to see Inmate TDP enter the doorway, still with his hands by his side, and he looks to his left in the direction of the TV as he enters the room. At 12:44:18pm, Inmate Henderson abruptly and quickly turns his body counterclockwise to face Inmate TDP and at the same time, Inmate Henderson thrusts his right hand in the direction of Inmate TDP's neck. Inmate TDP looks to his right as if to avoid the sudden assault and protect his face. Inmate Henderson's left hand is on Inmate TDP's upper chest area as if to stabilize

Inmate TDP's body while he directs the stabbing motion at his neck. I am unable to tell from video quality and body positioning what, if anything, is in Inmate Henderson's right hand as he thrusts it at Inmate TDP's neck, but the area of Inmate TDP's neck that was contacted is consistent with where he had an object impaled into the left side of his neck. Additionally, I did not see Inmate Henderson discard or pocket the tissue in his right hand prior to this initial assault. I am able to see after this initial assault that Inmate TDP appears to have an object impaled into the left side of his neck. At this time, Inmate Henderson continues to deliver rapid, repeated righthand fist strikes to the area of Inmate TDP's head area and the altercation moves into the Treatment Center vestibule area. I was able to count a total of 13 strikes that Inmate Henderson delivered to Inmate TDP. Inmate TDP delivered 2 righthand closed fist strikes towards Inmate Henderson during this initial altercation and I could see that Inmate TDP was using his left hand to try and keep Inmate Henderson away from him. As Inmate TDP is continuing to be attacked by Inmate Henderson, Inmate TDP is able to move a shelf unit between them so as to protect himself. I am able to still see white tissue in Inmate Henderson's right hand. Inmate Henderson pushes the shelf unit out of the way and directs more rapid punches to the area of Inmate TDP's face area. I am able to still see an object impaled in Inmate TDP's neck at this time. Inmate TDP continues to fight back and protect himself by directing 2 punches towards Inmate Henderson. At this time, GBCI staff has the gate opened and they spray oleoresin capsicum (OC) spray in the direction of the inmates. Inmate TDP is able to get away from Inmate Henderson and he retreats back into the HSU waiting room. The altercation ends at 12:44:34pm and lasts a total of 16 seconds. Inmate DEA remains in the HSU waiting room the entire time and looks on during the entire altercation, but does not get involved in any way.

5. Complainant's review of the supplemental report of Sergeant O'Connell, a summary of which indicates the following:

On 05-22-23, I arrived at the sheriff's office and found that Inmate TDP's medical records had been delivered to me via email on 05-1-23 at 5:11pm. This was pursuant to the subpoena that I drafted and served to St. Vincent Hospital on 04-19-23.

I reviewed the medical record and noted the following relevant information:

Inmate TDP arrived at St. Vincent Hospital on 03-11-23 at 1:15pm. Inmate TDP was discharged on 03-12-23 at 12:48pm. The reason for the visit (pg. 1) was documented, in part, as:

"Trauma, Stab Wound, Eye Pain (Pt arrives via rescue from GBCI, pt is inmate, got in altercation with another inmate. Pt presents with stab wound to left anterior neck with 4mm diameter object still intact in neck. Unknown depth/length of object. Pt alert, oriented, breathing without difficulty, bleeding controlled. Hematoma in area of object. Pt reporting pain to bilateral eyes, was pepper sprayed during altercation. GCS 15.)"

Under the section for History of Present Illness (HPI), Dr. Kyle McCarty noted, in part, the following (pg. 4):

"40 YOM brought to our emergency department from local prison with concern for a stab wound with retained foreign body to the left side of the neck. Reportedly about half an hour prior to arrival the patient was stabbed in the left side of his neck with an unknown object. In the course of de-escalating the situation, the patient was at some point sprayed in the eyes with OC.

Upon arrival to RD the patient is awake and alert. He is answering questions. He reports pain with swallowing on the left side of his neck. He denies shortness of breath. No head pain. No chest pain."

Under the section for ED Course/Procedures/Medical Decision Making, Dr. McCarty noted, in part, the following (pg. 7-8):

"40 YOM brought to our emergency department from local prison with concern for a stab wound with retained foreign body to the left side of the neck. At this time, the patient is afebrile and nontoxic appearing, however has an obvious penetrating wound to zone 2 on the left side of the neck with associated edema. I had a discussion with Dr. Attiyat from Trauma Surgery about prophylactically intubating the patient to secure his airway, however she recommended against this, preferring to go to CT first."

"The acuity of the patient's presenting problem today is severe."

"Patient has significant prevertebral air on CT. Dr. Attiyat from trauma surgery will take the patient directly to the operating room for further management of his penetrating neck wound with retained foreign body. The patient understands and agrees with this plan."

"Without intervention, the patient's medical condition had a high probability of imminent and irreversible damage to life, limb, or organ system. Additionally, I was concerned about life threatening deterioration of the patient's condition without intervention."

The record indicated that Inmate TDP was turned over to the care of Dr. Maymoona Attiyat in trauma surgery. The record indicated (pg. 24) that an esophogram and intraop bronchoscopy were completed and were both negative for injury. "Neck wound exploration with removal of foreign body, control of bleeding," was also completed.

"Findings" are documented in the medical record (pg. 26) and they are noted by Dr. Attiyat as:

"Plastic foreign body about 2 cm in the wound on the left neck. Muscular bleeding controlled with sutures."

Clinical notes in the medical record (pg. 27) indicate, in part:

"The foreign body was then removed carefully and sent for pathology."

The gross examination section in the pathology report (pg. 39) indicates, in part, the following:

"Left side of neck, foreign body: Received in a fixative labeled 'left neck foreign body' are several elongated fragments of plastic material measuring up to 1.8 cm in length and varying between 0.1 0.3 cm in diameter. The specimen is for gross examination only."

In the "Flowsheets" section of the medical record (pg. 124), under "Mechanism of Injury", it is documented as:

"Pt GBCI inmate, got in altercation, stab wound to left neck near carotid with unknown 4mm diameter object. Bleeding controlled, small hematoma in area, pt alert oriented and talking"

The above information is not all-inclusive as to what is contained in Inmate TDP's medical record, but are documented excerpts that I was able to locate and determined to be relevant to this case.

6. Your complainant has reviewed the records of the Wisconsin Circuit Court Access Program (CCAP) website, which records are believed to be truthful and reliable as they are records kept in the ordinary course of departmental business. Said records indicate the defendant was convicted of Battery by a Prisoner on or about 8/9/2013 in Grant County Case 12CF253. CCAP records further show the defendant was convicted of a previous serious violent crime or a crime punishable by life imprisonment, First Degree Reckless Homicide on or about 7/14/1995 in Racine County Case 94CF43. Said convictions remain of record and unreversed.

Based on the foregoing, the complainant believes this complaint to be true and correct.

Subscribed and sworn to before me on 06/30/23

Electronically Signed By:

David L Lasee

District Attorney

State Bar #: 1041798

Electronically Signed By:

John Luetscher

Complainant