IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

    Plaintiff,

v.                                         Case No. 23C1233

CANDACE DIXON,

    Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF FACT (DKT. 28)

Defendant Candace Dixon, by her attorneys, Attorney General Joshua L. Kaul and Assistant Attorneys General Jonathon M. Davies and Samir S. Jaber, hereby responds to Plaintiff's Proposed Findings of Fact (Dkt. 28), which has been typed verbatim, as follows:

1. Between the month's December of 2022 & January of 2023 Candice Dixon came to me and told me she was aware of a "credible and corroborated threat to stab you".

**RESPONSE: Dispute. Dixon did not have any conversation with Prude concerning Henderson or threats made against Prude. (Dixon Decl., ¶¶ 5-11, 16.)**

2. I asked Dixon the name of the person who was supposed to be stabbing me, she told me the inmate name was Titus Henderson.

> **RESPONSE: Dispute. Dixon did not have any conversation with Prude concerning Henderson or threats made against Prude. (Dixon Decl., ¶¶ 5-11, 16.)**

3. A few days later, Dixon returned to my cell telling me that if I "wanted to avoid that attempt on your life" that I should have my "family cash app $2,000 to CandiBands [or CandiLand]" and handed me a piece of paper that had "CandiBands [or CandiLand]" written under the words "My cash app."

> **RESPONSE: Dispute. Dixon did not have any conversation with Prude concerning Henderson or threats made against Prude. (Dixon Decl., ¶¶ 5-11, 16.) Dixon also does not have a Cash App account under those names. (Dixon Decl., ¶ 12.)**

4. I ripped up the paper and said "You got me fucked up, I'm not paying you or Titus nothing". Dixon walked off stating "your funeral".

> **RESPONSE: Dispute. Dixon did not have any conversation with Prude concerning Henderson or threats made against Prude. (Dixon Decl., ¶¶ 5-11, 16.)**

5. In January of 2023, I learned from inmates and prison staff that Dixon was "fired for bringing in drugs and cell phones for inmates".

> **RESPONSE: Objection. The proposed finding is irrelevant; it is also hearsay and not based on Plaintiff's personal knowledge. Dispute. Dixon did not and was not investigated for bringing in drugs and cell phones. (Dixon Decl., ¶ 25; Kind Decl., ¶ 30.) This dispute is immaterial.**

6. While being stabbed on March 11, 2023, Titus Henderson was stating "this for not paying Dixon".

**RESPONSE: Dispute. Dixon did not request payment from Prude or interact with Henderson. (Dixon Decl., ¶¶ 16-17.) Henderson stated that he stabbed Prude in self-defense. (Kind Decl., ¶ 40.)**

7. Hearing this, while being stabbed, made me understand that Titus Henderson was the one involved with Dixon in the attempt to extort me & that my refusal to pay Dixon $2,000 was why I was being stabbed.

**RESPONSE: Dispute. (*See* ¶¶ 2, 6, supra.)**

8. Prior to being stabbed, Dixon led me to believe that she would report the threat to the Security Director John Kind, by saying she would.

**RESPONSE: Dispute. Dixon did not have any conversation with Prude concerning Henderson or threats made against Prude. (Dixon Decl., ¶¶ 5-11, 16.)**

9. Security Director John Kind reported to the Institution Complaint Examiner ("ICE"), A. DeGroot, that "Dixon never said anything to him". See Dkt. #1-1, Page 10.

**RESPONSE: Objection. The proposed finding is hearsay and not based on Plaintiff's personal knowledge.**

10. The ICE, A. DeGroot, also investigated Dixon's actions and found that Dixon "did not submit an incident report" about the threat to stab me. See Dkt. #1-1, Page 10.

**RESPONSE: No dispute.**

11. I refused to report the incident myself prior to being stabbed because I just don't trust prison officials to keep me safe. The fact a prison staff (i.e. Dixon) was directly involved in: (1) the attempt to extort me for $2,000; and (2) facilitating the attempt to have me stabbed when I refused to pay the $2,000 extortion fees, is what made me not know who to trust because for all I knew other prison staff could have been working with Dixon & Titus Henderson.

**RESPONSE: Objection. The proposed finding is based on the false premise that there was a conversation between Prude and Dixon to report. (See supra ¶¶ 2-6.) Dispute. Dixon was not involved in an attempt to extort Prude and did not discuss any threat with him. (Dixon Decl., ¶ 16.)**

12. I suffered a severe stab wound to my neck as a direct result of Dixon's actions & omissions. See Dkt. 1-1, Page 22-23.

**RESPONSE: Objection. The term "severe" is vague and unclear. No dispute that Prude was stabbed. Dispute that the stabbing occurred as a result of Dixon's actions and omissions. (Dixon Decl., ¶ 18.)**

13. I suffered, & continue to suffer, physical pain as a result of being stabbed. See Exhibit #1, Page 1-19 attached. I was also prescribed a device called Transcutaneous Electrical Nerve Stimulation (T.E.N.S.) which treats my nerve damage in my neck rooted from being stabbed in my neck. See Exhibit #3, Page 4, attached.

**RESPONSE: No dispute for purposes of summary judgment.**

14. I'm also prescribed pain medication such as Naproxen and Acetaminophen to treat the daily pain I still have. See Exhibit #2, Page 2-10, attached.

**RESPONSE: No dispute for purposes of summary judgment.**

15. I also suffered, and continue to suffer, emotional & mental pain & suffering where I had nightmares of the stabbing incident I experienced where I died in my dreams. See Exhibit #1, Page 1 & 9; and Exhibit #2, Page 12-13, attached.

**RESPONSE: No dispute for purposes of summary judgment.**

16. I was seen by a psychiatric doctor for my mental sufferings and I was prescribed a psychotropic medication called Mirtazapine. See Exhibit #2, Page 10-13, attached.

**RESPONSE: No dispute for purposes of summary judgment.**

17. I declare that Exhibits #1, #2 and #3 are true & correct documents from my medical records that I obtained from my medical fie.

**RESPONSE: No dispute for purposes of summary judgment.**

18. Candice Dixon was inappropriately having a sexual relationship with inmates where she was taking sexual photos of herself[1] and gave them to Titus Henderson and another inmate name "Jamil" who would sell the photos to inmates.

**RESPONSE: Objection. The proposed finding is hearsay and not based on Plaintiff's personal knowledge. Dispute. Dixon did not have an**

---

[1] Plaintiff's footnote: "Some of the photos shown her face and some merely shown her body parts."

**inappropriate relationship with or give photos of herself to Henderson or "Jamil." (Dixon Decl., ¶¶ 19-22.)**

19. Defendant Dixon thought I was provided some of these porn photos of her (despite me telling her, Jamil, and Mr. Henderson I didn't have them). Dixon herself indicated (in conjunction with "Jamil" and Henderson) that if I didn't turn over the porn photos of her (or pay $2,000 to avoid the assault/threat that I'd be assaulted.) I'd be assaulted.

**RESPONSE: Dispute. (*See* supra ¶¶ 1-6, 18.)**

20. Dixon was placed under investigation by prison officials for this inappropriate relation with "Jaleel" and was confronted with the evidence against her and placed on investigative leave.

**RESPONSE: Objection. The proposed finding is hearsay and not based on Plaintiff's personal knowledge. It is also irrelevant.**

21. Dixon chose to quit her job as a prison guard in the face of the evidence which proved she was providing porn photographs of herself to inmates. Being fired was imminent and to avoid being fired Dixon chose to quit her job as a prison official.

**RESPONSE: Objection. The proposed finding is hearsay and not based on Plaintiff's personal knowledge. It is also irrelevant.**

22. Quiting is what prevented prison investigators from questioning Dixon about her involvement in me being assaulted. See Dkt #1-1, Page 10 ("Officer Dixon no longer works for the DOC so I am not able to contact her.").

**RESPONSE: Objection. The proposed finding is hearsay and not based on Plaintiff's personal knowledge. No dispute for purposes of summary judgment.**

23. Defendant Dixon, during discovery, has denied that her no longer working as a prison guard derived from her having an inappropriate relationship with inmates.[2] See Dkt. #18, Exhibit #4, Page 2 of 3 at par 1. of Defendant's Response To Plaintiff's First Request For Admissions.

**RESPONSE: Objection. The proposed finding misstates the discovery response. (Dkt. 18-1:15.) Dispute.**

24. Had Dixon not had an inappropriate relationship with these inmates where she provided porn photographic images of herself it would not have caused "Jamil" and Henderson to use the photos as a starting point (with Dixon's help) to extort me. Not only was Dixon aware of the threat to assault me, she helped to facilitate it when I refused to submit to paying $2,000 when she falsely accused me of possessing the photos of her.

**RESPONSE: Objection. The proposed finding is based on a false premise because Dixon did not have an inappropriate relationship with Henderson or "Jamil," nor did she extort Prude. (Dixon Decl., ¶¶ 16-17, 19-20.) Dispute.**

---

[2] Plaintiff's footnote: After research/investigating the facial identity of "Jaleel" I've now learned that this "Jaleel" is not "Jaleel Schultz". In fact, I've learned that the inmate who I was told name was "Jaleel" is actually name "Jamil," real name Jamie (I'm told).

Dated: August 9, 2024.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Jonathon Davies
JONATHON M. DAVIES
Assistant Attorney General
State Bar #1102663

SAMIR S. JABER
Assistant Attorney General
State Bar #1076522

Attorneys for Defendant

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-8125 (Davies)
(608) 267-2229 (Jaber)
(608) 294-2907 (Fax)
daviesjm@doj.state.wi.us
jaberss@doj.state.wi.us