IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

    Plaintiff,

v.                                     Case No. 23C1233

CANDACE DIXON,

    Defendant.

## DEFENDANT'S PROPOSED FINDINGS OF FACT

Defendant Candace Dixon, by and through her attorneys, Wisconsin Attorney General Joshua L. Kaul and Assistant Attorneys General Jonathon M. Davies and Samir S. Jaber, hereby submit the following proposed findings of fact in support of her motion for summary judgment.

1. Plaintiff Terrance Prude is an inmate in the custody for the Wisconsin Department of Corrections (DOC) and was housed at Green Bay Correctional Institution (Green Bay) at all times relevant to this lawsuit. Prude is currently housed at the Wisconsin Secure Program Facility. (Dkt. 1:1; Dkt. 11.)

2. Defendant Candace Dixon was previously employed by DOC as a Correctional Officer at Green Bay from May 24, 2020 to January 5, 2023, when she resigned from state service. (Dixon Decl. ¶ 2.)

3. Prude was allowed to proceed on an Eighth Amendment failure to protect claim against Officer Dixon based on allegations that Officer Dixon was aware of a credible threat to stab Prude but did nothing. (Dkt. 5.)

**Safety Concerns**

4. John Kind was previously employed by DOC as the Security Director at Green Bay from April 2015 to July 2024 and is currently the Security Director at Redgranite Correctional Institution. Security Director Kind is not a defendant in this lawsuit. (Kind Decl. ¶¶ 2, 4.)

5. A Special Placement Need, or SPN, is a designation that the inmate is to be separated from another inmate or staff member. (Kind Decl. ¶ 6.)

6. There are two basic types of SPNs: separation from a facility and separation from another person, either inmate or staff member. (Kind Decl. ¶ 7.)

7. Threats to injure others do not routinely warrant an SPN unless the person making the threats has a history of assaults within the past year or there are clear and convincing reasons to believe the threat will be carried out. (Kind Decl. ¶ 8.)

8. Protective Confinement, or PC, is non-punitive separation from the general population of an institution necessary to ensure the safety and welfare of an inmate. (Kind Decl. ¶ 9.)

9. If an inmate feels that he is unsafe and believes he needs to be kept separate from another inmate or staff member, he may file a DOC-1803 form for an SPN or a DOC-1116 form for PC. (Kind Decl. ¶ 10.)

10. Although threats do not routinely warrant an SPN or PC, Security Director Kind would still encourage any inmate to file for an SPN or PC if they feel threatened or have been threatened. This way, the inmate's concerns can be reviewed and addressed. Further, requesting an SPN or PC will provide a paper trail of the request in the event the concern escalates. (Kind Decl. ¶ 11.)

11. Between 2022 and March 2023, Prude submitted one request for an SPN; however, it was not against Titus Henderson. (Kind Decl. ¶ 12.)

12. Prude is familiar with how to request an SPN and how to report security threats. Prior to March 2023, Prude had submitted at least five SPNs against inmates other than Henderson, some of which are still active. (Kind Decl. ¶ 13; Ex. 1002.)

13. Prude has not submitted any requests for PC. (Kind Decl. ¶ 14.)

14. If an inmate does not wish to file for an SPN or PC, they should still report any concerns regarding their safety to staff. An inmate may report a concern to staff in person at any time, he may write to any staff member, or use the phone to call one of the help lines. (Kind Decl. ¶ 15.)

15. Even if an inmate believes that staff are involved in underlying threats, there are numerous options for an inmate to report being threatened, including writing an inmate complaint, speaking to a security supervisor, or writing to the Warden, Deputy Warden, Security Director, a social worker, health services staff, psychological services staff, or the DOC Central Office in Madison. (Kind Decl. ¶ 16.)

16. It is extremely important for inmates to report to staff if they feel unsafe so the facility has an opportunity to follow up on the concerns, investigate if there are larger issues that could cause institution unrest, and ensure the inmate is safe. (Kind Decl. ¶ 17.)

17. If an inmate reports to staff that he has been threatened by another inmate or staff member, an investigation will be opened, and proper action will be taken to ensure the safety of the inmate(s), staff, and institution. (Kind Decl. ¶ 18.)

18. Additionally, the Green Bay inmate handbook contains instructions for how prisoners are to report sexual misconduct between staff and inmates. (Kind Decl. ¶ 19; Ex. 1003.)

19. According to the handbook, "It is important to report an incident of sexual misconduct in a timely manner." (Ex. 1003 at 4.) All inmates are required to obtain a booklet explaining how to report such misconduct. (Kind Decl. ¶ 20; Ex. 1003 at 5.)

**Terrance Prude and Titus Henderson**

20. From December 1, 2022 to February 6, 2023, Prude was housed on the North Cell Hall. (Dixon Decl. ¶ 13; Ex. 1000.)

21. Prude did not report to Security Director Kind or any other staff that anyone, including Henderson or anyone with the name Jaleel, Jamie, or Jamil, had threatened him in 2022. (Kind Decl. ¶ 33.)

22. On February 6, 2023, Prude was transferred to the South Cell Hall, where Henderson was then housed. (Kind Decl. ¶ 21; Ex. 1000; Ex. 1001.)

23. Prude alleges that Security Director Kind knew that there was "bad blood" between Henderson and Prude. Prude alleges that Security Director Kind had Prude moved to the same housing unit as Henderson anticipating a "small conflict" to test Henderson's allegations that Henderson and Prude were in a conflict. (Dkt. 1:7-8.)

24. Security Director Kind's recollection is that Prude was moved to the South Cell Hall in February 2023 because they wanted to flip a different high ranking gang member from the South to the North Call Hall. It had nothing to do with Henderson or Prude. (Kind Decl. ¶ 23.)

25. Security Director Kind never told Prude that he anticipated a "small conflict" between him and Henderson. Security Director Kind doesn't personally recall having concerns about Prude and Henderson being on the same housing unit at the time that Prude was transferred to South Cell Hall. (Kind Decl. ¶ 24.)

26. If Security Director Kind knew that there was a risk that Henderson and Prude could have gotten into an altercation if housed on the same unit, they would not have been placed on the same unit. (Kind Decl. ¶ 25.)

27. In February 2023, Prude alleges that he had a conversation with Henderson in the showers where Henderson confronted Prude about pornographic photos of Officer Dixon that Henderson alleged Prude had in his possession. Prude alleges that Henderson told Prude that if Prude did not turn over the photos of Officer Dixon or pay, "the threat still stands." (Prude Dep. Tr. 47:3-48:6.)

28. Prude did not report to Security Director Kind or any other staff that

Henderson had threatened him in February 2023. (Kind Decl. ¶ 35.)

29. If Prude had reported the threat to any staff besides Security Director Kind, staff are trained to report the threat to the security office. (Kind Decl. ¶ 36.)

30. No staff reported a threat by Henderson against Prude prior to the March 2023 incident. (Kind Decl. ¶ 37.)

31. On March 11, 2023, Prude was assaulted by Henderson in the Health Services Unit at Green Bay. Henderson stabbed Prude in the neck with a pen, which resulted in Prude being sent to the hospital. (Kind Decl. ¶ 38.)

32. An SPN was filed on Prude's behalf to keep Prude and Henderson separated by facility on October 12, 2023. The SPN is currently in effect and does not have an expiration date. (Kind Decl. ¶ 39.)

33. During the investigation, Henderson told staff that he attacked Prude out of self-defense. Henderson believed that Prude had a razor in his hand and was raising his hand to attack Henderson, so Henderson took the pen out of his pocket and attacked first. (Kind Decl. ¶ 40.)

**Officer Candace Dixon**

34. In December 2022, Officer Dixon regularly worked on the South Cell Hall from 2:00pm to 6:00am, but was sometimes assigned to work in the lobby, treatment unit, visitation, North Cell Hall, or other areas of the institution as needed. (Dixon Decl. ¶ 14.)

35. Officer Dixon did not regularly interact with Prude. She regularly worked on the South Cell Hall, while Prude was housed on the North Cell Hall. As

such, Officer Dixon only saw Prude in passing and does not recall having any substantive conversations with him. (Dixon Decl. ¶ 15.)

36. Officer Dixon does not recall ever having a substantive conversation with Prude. At most, she may have occasionally said "hello" or exchanged pleasantries when passing him in the institution. Officer Dixon never discussed photos of herself, Henderson, or threats with Prude. (Dixon Decl. ¶ 16.)

37. Officer Dixon did not regularly interact with Henderson while she worked at Green Bay. She did not recall who Henderson was until she was notified of this lawsuit and looked up him on the DOC online inmate locator. (Dixon Decl. ¶ 17.)

38. Officer Dixon was not aware of any threat by Henderson or by any other inmate to harm Prude. (Dixon Decl. ¶ 18.)

39. Officer Dixon was not having an inappropriate or sexual relationship with Titus Henderson, nor did she provide Henderson with photos of herself. (Dixon Decl. ¶ 19.)

40. Officer Dixon did not report to Security Director Kind at any time that she was aware of a threat made by Titus Henderson against Terrance Prude. (Kind Decl. ¶ 26.)

41. On December 30, 2022, Officer Dixon was placed on administrative leave pending an investigation into allegations that are unrelated to Prude and Henderson. (Kind Decl. ¶ 27.)

7

42. Officer Dixon was not under investigation for having an inappropriate relationship with Titus Henderson. (Dixon Decl. ¶ 23; Kind Decl. ¶ 29.)

43. Officer Dixon was not under investigation for bringing drugs and/or cell phones into the institution. (Dixon Decl. ¶ 24; Kind Decl. ¶ 30.)

44. Officer Dixon was not fired by DOC. She did resign under investigation into allegations that are unrelated to Henderson or Prude. (Dixon Decl. ¶¶ 26-27.)

**"Jamie/Jamir/Jaleel"**

45. In his brief in support of his motion to compel, Prude alleged that Officer Dixon was in an inappropriate relationship with Henderson and "Jaleel Schultz," that Dixon had provided Henderson and Schultz with pornographic photos of herself, and that Prude was extorted to pay $2,000 or be assaulted. (Dkt. 21:1.)

46. Prude testified at his deposition that in approximately mid-to-late-2022, an inmate by the name of "Jaleel" was acting on Henderson's behalf and approached Prude multiple times stating that Prude had pornographic photos of Officer Dixon in his possession. "Jaleel" told Prude that Prude needed to return the photos or pay for them, or he would be met with physical violence. (*See generally* Prude Dep. Tr. 31:6-32:17, 33:10-34:22, 37:16-40:18.)

47. On June 19, 2024, counsel for Officer Dixon deposed Jaleel Schultz. At the deposition, Prude stated that Jaleel Schultz was not the individual he previously referred to and that he had never seen Schultz before in his life. Prude argued that he was instead referring to someone by the name of "Jamir," "Jamil," or "Jamie." (Schultz Dep. Tr. 8:18-25, 9:15-18, 22-23, 10:3-6, 12:21-13:1, 29:5-23.)

8

Case 2:23-cv-01233-WED    Filed 08/09/24    Page 8 of 12    Document 41

48. Schultz testified that he did not know Prude or Henderson and did not know anything about Henderson stabbing Prude. (Schultz Dep. Tr. 10:22-11:17, 13:5-7.) He testified, "I've never seen him [Prude] a day in my life." (Schultz Dep. 11:2.)

49. In his motion for summary judgment, Prude stated that an inmate by the name of Jaleel, Jamie, or Jamil "was involved with Defendant Dixon and helped with the assault directed by Dixon." Prude also stated that the inmate was not Jaleel Schultz. (Dkt. 27:6.)

50. Officer Dixon is not familiar with any inmates by the name Jamil or Jamie, but she is familiar with an inmate by the name of Jaleel Schultz. (Dixon Decl. ¶¶ 20-21.)

51. Green Bay's litigation coordinator, Denielle Larie, has access to the Wisconsin Integrated Corrections System (WICS), which is the electronic database that DOC uses for inmate records, such as housing, movement, inmate banking, conduct reports, incident reports, etc. (Larie Decl. ¶ 13.)

52. Larie ran a search in WICS for all variations of the following names based on Prude's statements:

- First Name: Jamie
- First Name: Jaime
- First Name: Jamir
- First Name: Jamil
- First Name: Jaleel
- Last Name: Schultz
- Last Name: Shultz
- Last Name: Shulz

(Larie Decl. ¶ 14.)

53. The only inmate with a matching name housed at Green Bay during the timeframe that Officer Dixon worked at Green Bay is Jaleel Schultz. (Larie Decl. ¶ 15.)

54. There were no inmates matching any of the other name variations who were housed at Green Bay during the same timeframe that Officer Dixon worked at Green Bay (May 24, 2020 to January 5, 2023). (Larie Decl. ¶ 16.)

**Reporting the Threat**

55. Prude testified that in 2022, he had at least 10 conversations with "Jaleel" in which "Jaleel" believed that Prude was in possession of pornographic photos of Officer Dixon. Prude believes "Jaleel" was working with Henderson. The last conversation Prude alleges he had with "Jaleel" took place in the fall of 2022 and involved "Jaleel" making a threat of physical violence against Prude. (Prude Dep. Tr. 31:17-32:17, 33:10-15, 34:8-35:2, 37:16-40:12.)

56. Prude testified that he had three conversations with Officer Dixon. First, in December 2022, Officer Dixon came to Prude and told Prude that she was aware that Henderson was going to stab Prude. She also allegedly said, "Be honest about the pictures," at which time Prude denied having pictures and Officer Dixon left. (*See generally* Prude Dep. Tr. 63:4-11, 64:3-6; 65:13-67:6, 72:3-5.)

57. Second, either the same day or the day after the first interaction, Prude alleges that Officer Dixon approached him again and told Prude that if he did not hand over the photos of Officer Dixon or pay for the cost of the photos, that Henderson was going to stab Prude. Prude then alleges that Officer Dixon told him that she was

10

Case 2:23-cv-01233-WED    Filed 08/09/24    Page 10 of 12    Document 41

going to notify the Security Director about the threat to his safety. (*See generally* Prude Dep. Tr. 67:10-21, 68:9-17, 69:23-70:5; 70:9-19; 71:15-17.)

58. Third, Prude alleges that a few days after the first two conversations, Officer Dixon handed Prude a piece of paper that had her Cash App name on it and told Prude to have his people send $2,000 to her cash app if he wanted to avoid an assault. He alleges that when he refused, Officer Dixon told him, "Your funeral." (Prude Dep. Tr. 71:22-72:8, 12-19, 73:20-25.)

59. In Prude's motion for summary judgment, he alleges that he did not report that Officer Dixon knew about Henderson planning to stab Prude and/or Officer Dixon attempting to extort him because Officer Dixon told Prude that she would report the issue to the Security Director. Prude alleges that because Officer Dixon told Prude she would report the issue, Prude did not believe he had to report it. (Dkt. 27 ¶ 5; Dkt. 28 ¶ 8.)

60. Prude then alleges that when Dixon returned to his cell to extort him for $2,000, he "learned that she would have no reason to report the threat to stab me because she was complicit in the plot." (Dkt. 27 ¶ 5.)

61. Prude testified that he did not believe that Officer Dixon was being genuine and did not take her seriously when she said she would notify security about the threat because she would have no reason to report herself to security. (Prude Dep. Tr. 70:2-5, 19-71:6.)

62. Prude also stated he refused to report the threat himself because he did not trust prison staff to keep him safe and "didn't feel the need to report it to people

who could be as corrupt as her, so no, I didn't report it." (Dkt. 28 ¶ 11; Prude Dep. Tr. 77:13-78:1.)

Dated: August 9, 2024.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin


s/ Jonathon Davies
JONATHON M. DAVIES
Assistant Attorney General
State Bar #1102663

SAMIR S. JABER
Assistant Attorney General
State Bar #1076522

Attorneys for Defendant

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-8125 (Davies)
(608) 267-2229 (Jaber)
(608) 294-2907 (Fax)
daviesjm@doj.state.wi.us
jaberss@doj.state.wi.us