Eastern District Court

Plaintiff: Terrance Prude.
-vs-
Defendant: Candice Dixon.

Case #23-CV-1233

## Plaintiff Prude's Response To Defendant's Proposed Findings Of Fact (DKt #41)

1.-10. Not material under the facts of this case, but no material disputed.

11. Material dispute. While housed in Green Bay Correctional Institution (GBCI) I did not submit (or fill out) any request for keep separate against an inmate or staff. This allegation is falsehood. See attached Declaration at par 1.

12. Material dispute. I did not submit any SPN's against inmates prior to March 2023. I'm aware of the fact inmates has presented SPN's against me that are active. But to claim "Prude had submitted at least five SPNs against inmates other than Henderson, some of which are still active" is outright false and an outright lie. Oddly, defendants redact DKt #34-1 Exhibit #1002 which would disclose "who" requested or submitted SPN

attach any documents to prove that the SPN were, in fact, submitted by me. All the references to SPN records were not submitted by me. In fact, prison staff on their own (pursuant to other inmates submitting verbal complaints against me) file SPN's in my name. See <u>Defendants Proposed Findings Of Fact (Dkt #41) at par 32</u>. See <u>Prude's attached Declaration at par 2</u>.

13.-14. No dispute.

15. <u>Material dispute.</u> If an inmate has reason to believe that multiple staff are involved in the threats of violence against him or her the inmate should not be required to report to the very staff who placed him in that condition in the first place. See <u>Dkt.#28, par 11</u>; <u>Dkt.#1, par 19A-19E</u>.

16.-19. See above at par 15. <u>Material dispute.</u>

20.-23. No dispute that I never reported the threat. See <u>Dkt.#28, par 11</u>. But refute that staff (i.e. John Kind and Candice Dixon) was not aware of the threat to my safety. See <u>Dkt.#1, par 19A-19E</u>; <u>Dkt.#28, par 1-4, 8</u>; and <u>Dkt.#1-1, Page 18 of 24 at paragraph four</u>.

24. <u>Material dispute.</u> That Kind "recalls" is wrong

in his claim that I was moved to the South Cell Hall from the North Cell Hall because they "wanted to flip a different high ranking gang member from the South to the North Cell Hall. It had nothing to do with Henderson or Prude". See Dkt.#1, par 19A-19E in dispute. If this swap out regarding an alleged "high ranking gang member" was true then the prison's top gang coordinator Captain Cushing would have been directly and personally aware of this swap, but he wasn't. See Email Communication between Captain Daniel P. Cushing and Captain Jay A. VanLanen marked Exhibit #200 (Cushing:"Anyone know why Terrance Prude was moved to the SCH?" and VanLanen responded: "SD had him moved." and Cushing replied: "***Sighhhh*****".)(Note: "SD" stands for "Security Director" which is what John Kind's ranking position is). Also, my civil complaint testified that another Captain name "Cummings" notified me of "who" moved me and "why". See Dkt.#1, par 19D. This is corroborated by the fact another Captain name Michael D. Cole told Captain Cushing that John Kind "ordered it". See Email Communication between Captain Daniel P. Cushing and Captain Michael D. Cole marked Exhibit #201 (Cushing:"Anyone know why Terrance Prude was moved to the SCH?" and Cole responded: "Through the rumor mill and talking to

25.-26. <u>Material Dispute.</u> Kind did say these things to me and Kind was aware of risk of altercation between me and Henderson. See Dkt#1, par 19A-19E. Also, Henderson allegedly reported the "risk" himself. See Dkt#1-1, Page 18 of 24 (Henderson's statements to Brown County Sheriff Officer O'Connell: "Sometime in 2020, I submitted a keep separate request to GBCI staff to be kept away from [TDP]. This request was denied. In June/July 2021, I submitted another keep separate request to be kept away from [TDP] but I never heard what the result was.").

27.-28. No dispute. <u>See above at par 20-23.</u>

29. <u>Material dispute.</u> A staff member (i.e. Dixon) was aware of the threat. See Dkt#1, par 6-8; and see Dkt#28, par 1-4, 8. Also, dispute that staff who are "trained" follow that training. Dixon's relationship with a few inmates prove that "training" is not followed. See Dixon's Investigative Reports at Exhibit#202. In fact, Dixon is still in a relationship with this inmate. See Dkt#37, ~~~~~ at Transcript "Page 13" Line 18 through to Transcript "Page 27" at Line 19.

30.-34. No dispute.

35. No dispute that Dixon did not "regularly interact with Prude." Material dispute as to Dixon's claim that she "does not recall" having "any substantive conversation" with me. See DKt.#28, par 1-4. Also, even Dixon acknowledges a "substantive conversation." See DKt.40, Page 1-2 ("Additionally, Dixon did not act with deliberate indifference because she alerted Prude to the threat").[1]

36.-38. Material dispute. See par 20-23, 35, above.

39. No dispute that Dixon may have not given nude photos of herself directly to Henderson. However, evidence show that Dixon did give nude photos of herself to at least one inmate that eventually ended up in Henderson's possession that was being used to sell to inmates in which Dixon was aware of. This is a material dispute. See DKt.#28, par 18-19; DKt.#36 at Transcript "Page 30" Line 4 through to "Page 75" at Line 2; Also, see Exhibit #202, Page 2 and Page 5.

---

[1] Dixon only alerted me of the threat as part of the extortion attempt. See DKt.#28, par 1-4. Dixon was required to report this threat to security administrators. Dixon was a co-actor in the threat, why would she report herself? Defendant's attorneys avoid this topic.

40.-41. No dispute.

42. <u>Material dispute.</u> There was an investigation that started but due to defendant Dixon quitting her job prison investigators hit a dead end. See <u>Dkt.#28, par 22.</u>

43. No dispute that investigative reports don't support it. However, dispute that the lack of an investigation somehow means Dixon was not engaged in such activity.

44. <u>Material dispute.</u> Dixon is outright lying that she "resign[ed] under investigation into allegations that are unrelated to[...] Jaleel". See <u>Exhibit#202</u>[a]

45. No dispute. But, I mistaken confused "Jaleel" for "Jamil" merely for two reasons: (1) Dixon has relationships with both prisoners; & (2) Their names rhyme, period. No bad faith applies to the mistake. See attached Declaration at par 3.

---

[a] This lie is only being invoked because Dixon and her attorney assumed that because this Court denied me access to these discovery request (Dkt.#31) that I would have no way to support my claims that she did resign exclusively because of her improper relationship with "Jaleel" Schultz.

46.-49. No dispute. But see par 45 above.

50. Dispute but not material to proving liability. These are smoke screens and "card trick" distractions.

51.-54. Dispute but not material. I object to the premise that ~~███~~ "Jamie" or "Jamil" was this inmates real name. Inmates hardly ever use their real names in prison. So, doing a WICS search on a alias/nickname would not produce results.

55.-62. No dispute.

TerrancePrude
*Terrance Prude*
8/18/2024