UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TERRANCE PRUDE,**

    Plaintiff,

v.                 Case No. 23-CV-1233

**CO CANDICE DIXON,**

    Defendant.

---

### DECISION AND ORDER

---

Plaintiff Terrance Prude, who is representing himself and currently confined at the Wisconsin Secure Program Facility, brings this lawsuit under 42 U.S.C. § 1983. Prude was allowed to proceed on a claim against defendant Correctional Officer Candice Dixon for allegedly failing to protect him from an attack from another inmate, Titus Henderson. The parties filed cross-motions for summary judgment, which are fully briefed and ready for a decision. (ECF Nos. 26, 32.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 54.)

### FACTS

Prude states that between December 2022 and January 2023 Dixon approached him and told him "she was aware of a credible and corroborated threat to stab" Prude. (ECF No. 28, ¶ 1.) Dixon also told Prude that the inmate who was going to stab him was Titus Henderson. (*Id.*, ¶ 2.) She told Prude that she would report the threat to Security Director John Kind (not a defendant). (*Id.*, ¶ 8.) Prude maintains that Dixon

never reported the threat to Kind. (*Id.*, ¶ 9.) There is also no evidence that Dixon filed an incident report about the threat. (*Id.*, ¶ 10.)

Prude asserts that, a few days after informing Prude of the threat, "Dixon returned to my cell telling me that if I wanted to avoid that attempt on your life I should have my family Cash App $2,000 to 'CandiBands'", which was Dixon's Cash App username. (*Id.*, ¶ 3.) She then gave him a piece of paper with her Cash App username on it. (*Id.*) Prude ripped up the paper and refused to pay her. (*Id.*, ¶ 4.) As Dixon left his cell she said, "your funeral." (*Id.*, ¶ 4.)

On March 11, 2023, Henderson stabbed Prude. (ECF No. 28, ¶ 5.) While Henderson was stabbing Prude, he said, "this is for not paying Dixon." (*Id.*, ¶ 6.) Prude sustained a stab wound to his neck and continues to experience pain as a result. (*Id.*, ¶¶ 12-14.) He also experiences emotional and mental pain and suffering. (*Id.*, ¶ 15.)

Dixon asserts that she "did not regularly interact with Prude." (ECF No. 41, ¶ 35.) She also "does not recall ever having a substantial conversation with Prude" (*id.*, ¶ 36), nor did she regularly interact with Henderson. (*Id.*, ¶ 37.) She states that she "was not aware of any threat by Henderson or by any other inmate to harm Prude." (*Id.*, ¶ 38.) As such, she would not have reported the threat to Kind nor would she have filed an incident report. (*Id.*, ¶ 40.)

According to Dixon, Henderson spoke with Prude in the showers in February 2023 and threatened him. (ECF No. 41, ¶ 27.) Dixon further notes that Prude did not report the threat at any time, nor did he file a Special Needs Placement (SNP) request to keep him away from Henderson. (*Id.*, ¶¶ 13, 28.) Prude does not dispute this.

Instead, he states that he did not report the threat because Dixon indicated to him that she would report it. (ECF No. 28, ¶ 9.) Prude also states that he never filed an SNP because he does not trust prison staff, and that any SNP that was filed that related to him was either filed by prisoner staff or by other inmates on Prude's behalf. (ECF No. 43, ¶ 12.) While Dixon initially contested this fact, in her reply brief she admitted that Prude has no history of filing an SNP on his own. (ECF No. 47 at 6, n. 4.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be

3

of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Prude claims his Eighth Amendment rights were violated when Dixon failed to protect him by reporting Henderson's attack. "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). To demonstrate an Eighth Amendment claim against an official for failing to protect him, a plaintiff must allege "the official knows of and disregards an excessive risk of safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Additionally, "the plaintiff must prove that the defendant's deliberate indifferent actually *caused* his injury." *Hunter v. Mueske*, 73 F. 4th 561, 565 (7th Cir. 2023) (citing *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) (emphasis in original)).

Dixon concedes that there is a question of fact as to whether Dixon knew of and failed to report the threat of Henderson's attack against Prude. But Dixon argues that

4

the question is immaterial because no reasonable jury could conclude that, even if Dixon did know of and fail to report the stabbing, Dixon' inaction was the proximate cause of Prude's stabbing. It is undisputed that approximately a month after Dixon allegedly informed Prude of the threat Henderson again threatened Prude. Dixon argues that, because there was a more recent threat, that absolved her of her duty to report the threat and put the onus on Prude to report the threat to prevent the stabbing.

Taking the facts in a light most favorable to Prude, a jury could reasonably conclude that Dixon knew Henderson's threat was continuous and ongoing. And if a jury could reasonably conclude that, then a reasonable jury could conclude that she was also *a* proximate cause of Prude's stabbing because the passage of time would not absolve her of her duty to protect Prude from Henderson. If Henderson's threat had been interrupted or previously addressed either by Dixon or other staff between the time Dixon informed Prude of the threat and the time the stabbing occurred, then arguably Dixon's failure to report the threat would not be a proximate cause. *See Hunter*, 73 F.4th 568 (stating that a defendant "will be held to answer only for those harms the risk of which made her conduct wrongful in the first place.") However, there is no evidence on the record suggesting that. As such, a question of material fact exists as to whether Dixon was both deliberately indifferent to the threat and whether she was a proximate cause of Prude's stabbing.

Dixon argues that, even if the court finds there are questions of material fact, the court should nevertheless grant summary judgment in her favor because she is

5

entitled to qualified immunity for claims brought under § 1983. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 F. App'x 773, 775 (7th Cir. 2018).

As discussed above, the court finds that a reasonable jury could conclude that Dixon violated Prude's Eighth Amendment rights when she failed to report an ongoing threat of a stabbing. And it is well-established that prison officials have a duty to prevent one inmate from attacking another and that doing nothing violates the Eighth Amendment. *See Hunter* 73 F.4th at 566 ("Obviously, doing absolutely nothing about a known serious risk constitutes deliberate indifference"; *Gidarisighn v. Pollard*, 571 Fed. Appx. 467 (7th Cir. 2014). Thus, Dixon is not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, both Prude's and Dixon's motions for summary judgment are denied. The court will hold a scheduling conference at a later date to discuss the next steps.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Prude's motion for summary judgment (ECF No. 26) is **DENIED.**

**IT IS FURTHER ORDERED** that Dixon's motion for summary judgment (ECF No. 32) is **DENIED**.

6

Dated at Milwaukee, Wisconsin this 24th day of January, 2025.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge