IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

    Plaintiff,

v.                                         Case No. 2023CV01233

CANDACE DIXON,

    Defendant.

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

Defendant argued in her principal brief that the Court should sanction Prude for fraud perpetrated in the Western District of Wisconsin and for perjury in this case. (Dkt. 65.) Prude's response (dkt. 71) is unpersuasive.

As an initial matter, Prude complains that Defense Counsel either failed to provide or provided inaccurate citations to the record. (Dkt. 71:2-3.) He further says that the Court must "comb through the docket for an unrelated matter." (Dkt. 71:3.) However, as a courtesy, Defendant attached the two relevant opinions to her sanctions motion and provided page citations (ex. 1004 & 1005). Defendant remains unsure what further citations Prude could desire.

The substance of Prude's response fares no better. To begin, Prude takes issue with the characterization of the Western District opinion as recommending a federal filing ban. (Dkt. 71:2.) As he himself points out, the Western District stated, "Prude certainly deserves a litigation bar…." (Dkt. 71:2 (quoting dkt. 65-2:1).) But, Prude

suggests that this was not a "recommendation" because the court declined to actually impose the filing bar. (Dkt. 71:2.)

Prude's argument misses the point. The language of the Western District's opinions makes clear that the court viewed a federal filing bar as the appropriate sanction but did not impose one because of the magistrate's limited jurisdiction. (Dkt. 65-1 & 2.) However, the court plainly contemplated that state defendants in Prude's other pending cases would raise the issue to be addressed in the presiding court. (Dkt. 65-2:1.)[1] Essentially, Prude's argument is that he gets a get-out-of-jail-free card by quirk of magistrate jurisdiction, a result that would be both iniquitous and detrimental to judicial authority. This Court has the power to and should give effect to the plain language of the Western District's opinions.

Next, Prude addresses some authorities regarding the imposition of sanctions. (Dkt. 71:3-4.) In particular, he selects one of the several authorities cited in Defendant's principal brief and argues that it involved different underlying conduct and sanctions than those at issue here. (Dkt. 71:3-4.) This argument again misses the mark. The authorities in question establish merely that a district court may impose sanctions for conduct in another venue. Prude's discussion casts no doubt on that premise. As elsewhere explained, Prude's extensive fraud and perjury warrant the sanction of dismissal, and his attempt to distinguish a case cited for a separate proposition do not change that result.

---

[1] True, Magistrate Judge Crocker specifically referred only to Prude's pending cases in the Western District. He was likely unaware that Prude's litigiousness had extended to the Eastern District, too. In any event, the different venue affects the analysis not one bit.

Prude also contends that he did not commit perjury at his deposition in this case. (Dkt. 71:4-5.) To recap, Prude testified at his deposition that "no," he has never "submitted" fabricated documents to a court. (Prude Dep., dkt. 36 at 7:2-4.) Now, confronted with multiple judicial opinions finding that he fabricated documents (dkt. 65-1 & 2), Prude maintains that he did not personally submit them; rather, he contends that a prison librarian submitted them on his behalf, or that they were submitted through the mail (in which case, presumably, the postman submitted them). (Dkt. 71:5.) However, under the prison mailbox rule, "a pro se prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies, regardless of whether they are ultimately mailed or uploaded." *Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015). Even setting aside the common-sense refutation, Prude's argument fails to this black-letter law.

Finally, Prude disputes Defendant's recitation of his attestations concerning Jaleel Schultz. (Dkt. 71:6.) Specifically, Defendant pointed out that Prude testified at his deposition that he had been approached by an inmate named "Jaleel," but then at Schultz's deposition claimed he had said "Jamil." (Dkt. 65:7.) Now, Prude asserts that he simply misremembered the name and corrected himself prior to Schultz's deposition. (Dkt. 71:6.)

It is worth noting off the bat that the misidentification of Jaleel/Jamil is not dispositive of the pending motion. Prude's demonstrated fraud and perjury are more than sufficient, and his dishonesty regarding Jaleel/Jamil is just more fuel for an already roaring fire. But for good measure, let's set the record straight: Prude

3

testified at his deposition that Jaleel, "J-A-L-E-E-L," had approached him. (Dkt. 36 at 32:4-5.) He followed up that testimony with a brief identifying the inmate as "Jaleel Schultz." (Dkt. 21:1.) Defendant sent a notice of deposition of Jaleel Schultz to Prude, and only then—12 days before the scheduled deposition—did Prude for the first time identify "Jamil or Jamie." (Dkt. 71:6 (citing dkt. 28:6.).) Then, at the deposition, Prude identified the inmate as Jamil and hypothesized that Defendant "somehow found everybody that's supposed to be having a relationship with [Dixon], and I guess y'all just decided to depose him [Schultz] or something." (Dkt. 37 at 9-10.)

Prude's story that he simply mistook the name is not credible. He spelled the name at his deposition, he doubled down on it in briefing, and only *after* Defendant noticed a deposition of Schultz—thus threatening to uncover the lie—did Prude change his story. Moreover, the Wisconsin offender locator has no record of a Jamil, Jamir, or Jamie at Prude's institution. Alone, Prude's incredible story might have presented a question for the jury. Here, though, it demonstrates a pattern of dishonesty that stretches back to the Western District, where he told substantially similar lies. Although the Court can impose sanctions without resort to this particular lie, Prude's worsening inconsistencies strengthen the case for dismissal.[2]

## Conclusion

For the reasons stated above and in Defendant's principal brief, the Court should sanction Prude by dismissing this case with prejudice.

---

[2] Prude also imputes nefarious motives to the Department of Justice and to Defendant's counsel. (Dkt. 71:6-8.) Counsel will take the accusation lying down so as not to distract from what is a meritorious motion.

Dated: September 29, 2025.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin


s/ Jonathon Davies
JONATHON M. DAVIES
Assistant Attorney General
State Bar #1102663

SAMIR S. JABER
Assistant Attorney General
State Bar #1076522

Attorneys for Defendant

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-8125 (Davies)
(608) 267-2229 (Jaber)
(608) 294-2907 (Fax)
daviesjm@doj.state.wi.us
jaberss@doj.state.wi.us